IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ROGER APPLEWHITE, individually and
on behalf of MABLE SPRINGS HOUSE, LLC                          PLAINTIFFS

v.                                            CAUSE NO. 1:14CV346-LG-RHW

CITY OF OCEAN SPRINGS, MISSISSIPPI,
and JOHN DOES 1-5                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
<u>DEFENDANT'S MOTION TO DISMISS</u>**

BEFORE THE COURT is the Motion to Dismiss [7] filed by defendant the City of Ocean Springs, Mississippi.  The City contends that plaintiff's claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because 1) plaintiff, as merely a landlord, cannot have a viable claim for discrimination under the Americans with Disabilities Act; and 2) the plaintiffs lack standing to bring claims for violations of constitutional equal protection and substantive due process rights.  The plaintiff has responded and the City has replied.  Having considered the parties' submissions, the record, and relevant legal authorities, it is the Court's opinion that the Motion should be granted in part and denied in part.

BACKGROUND

The plaintiffs in this case are Marble Springs House, LLC and its principal, Roger Applewhite.  They have sued the City of Ocean Springs for discrimination under Title II of the Americans with Disabilities Act, and for violations of their constitutional rights to substantive due process and equal protection of the laws.

According to the allegations of the Complaint, Marble Springs entered into a lease of its property, with an option to purchase, on Iberville Drive in Ocean Springs, Mississippi with Psycamore, L.L.C. Psycamore intended to use the property to provide outpatient/day treatment in the behavioral health field. Marble Springs began renovating the property as Psycamore sought an occupancy permit, and later a use permit, from the City. After extended proceedings, the City denied Psycamore's permit application.

Psycamore appealed the City's decision to the Circuit Court of Jackson County, which found no substantial evidence to support the City's decision, and therefore reversed the City's denial of Psycamore's permit applications. The City appealed to the Mississippi Supreme Court, which held that "the City's first decision – denying the certificate of occupancy – was arbitrary and capricious, and not supported by substantial evidence." *City of Ocean Springs v. Psycamore*, 124 So. 3d 658, 662 (Miss. 2013).

The United States Department of Justice also conducted an investigation under Title II of the ADA. The DOJ concluded that the City discriminated against Psycamore, "an outpatient psychiatric treatment facility, because of the known actual and perceived mental impairments of the patients treated there, and with whom Psycamore has a known association, in violation of the ADA." (Compl. Ex. A at 1, ECF No. 1-1). Among the remediation actions the DOJ demanded from the City was for it to "[p]ay compensatory damages, including damages for out-of-pocket expenses and lost profits, to Psycamore and other aggrieved persons in an

appropriate amount for injuries suffered as the result of the City's failure to comply with the requirements of Title II of the ADA." (*Id.* at 7).

The plaintiffs allege that Psycamore terminated its lease with Marble Springs effective January 31, 2012, because of the City's discrimination against Psycamore. Plaintiffs allege that the property remained vacant from February 1, 2012 until September 2013, when Marble Springs obtained a new tenant at a lower rent than that negotiated with Psycamore. Plaintiffs seek damages to remedy these "significant economic damages that are ongoing." (Compl. 6 (¶XV), ECF No. 1). Plaintiffs allege that they both incurred non-economic damages as well, "including but not limited to mental anguish, emotional distress, anxiety and other damages to be proven at trial." (*Id.*).

The plaintiffs' claims against the City are for: 1) violation of the ADA; 2) violation of Fifth and Fourteenth Amendment due process rights; and 3) violation of rights under the Equal Protection Clause. The City requests dismissal of these claims pursuant to Fed. R. Civ. P. 12(b)(6).

## THE LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc.,* 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Whether this standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

A.   The Americans With Disabilities Act

"The ADA is designed 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Tennessee v. Lane*, 541 U.S. 509, 516 (2004) (quoting 42 U.S.C. §§ 12101(b)(1), (b)(4)). Title II of the statute forbids discrimination by a public entity against persons with disabilities in public services, programs, and activities. *Id.* at 516-17. Private citizens are authorized by Title II's enforcement provision to bring lawsuits for money damages. *Id.*

The plaintiffs do not allege that they themselves have a disability, but that they are associated with persons with a disability, and were discriminated against on that basis. Courts have held that Title II encompasses a prohibition against such associational discrimination. *See, e.g., A Helping Hand, LLC v. Baltimore Cnty., Md.*, 515 F.3d 356, 364 (4th Cir. 2008); *Popovich v. Cuyahoga Cnty. Ct. of Common Pleas*, 150 F. App'x 424, 426-27 (6th Cir. 2005). As one court noted,

>  the Attorney General promulgated regulations implementing Title II

> that do indeed bar associational discrimination.  These regulations
> explicitly prohibit local governments from discriminating against
> entities because of the disability of individuals with whom the entity
> associates.  28 C.F.R. § 35.130(g).  Additionally, the appendix to the
> regulations clarifies that this provision is "intended to ensure that
> entities such as health care providers ... and others who provide
> professional services to persons with disabilities are not subjected to
> discrimination because of their professional association with persons
> with disabilities."  28 C.F.R. § 35.130(g) app. A.

*A Helping Hand, LLC*, 515 F.3d at 364.

In order to invoke Title II's association provision, the plaintiffs must allege: (1) a logical and significant association with an individual with disabilities; (2) a public entity knew of that association; (3) the public entity discriminated against them because of that association; and (4) they suffered a direct injury as a result of the discrimination.  *Schneider v. Cnty. of Will, State of Ill.*, 190 F. Supp. 2d 1082, 1091-92 (N.D. Ill. 2002) (citing 28 C.F.R. § 35.130).  It is the first element that the parties dispute here.

As the parties acknowledge, there are a number of cases in which an owner/operator of a facility offering services to disabled persons was found to have the "logical and significant association" necessary to state an associational discrimination claim.  *See A Helping Hand, LLC*, 515 F.3d at 364 (operator of methadone clinic); *Cortez v. City of Porterville*, 5 F. Supp. 3d 1160, 1165 (E.D. Cal. 2014) (grandfather forced to carry wheelchair-bound grandchild across grassy area to sports complex); *RHJ Med. Ctr., Inc. v. City of DuBois*, 754 F. Supp. 2d 723 (W.D. Pa. 2010) (operator of methadone clinic); *Caron Foundation of Fl., Inc. v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1363-64 (S.D. Fla. 2012) (operator of rehab

center for alcohol and substance abuse). In all of these cases, the party wrongfully prevented from providing services to disabled persons was able to make a Title II discrimination claim for their own injuries.

The plaintiffs allege a different type of associational discrimination claim, one based on the effects of the City's discrimination against Psycamore, not the City's discrimination against plaintiffs for associating with Psycamore. Plaintiffs argue that in a similar case, the United States and the City of St. Peters, Missouri entered into a consent decree which provided recovery to a tenant and a property developer. *United States v. City of St. Peters*, No. 4:13cv1493-CEJ (E.D. Mo. 2013). However, the allegations in that complaint were that the property developer "partnered" with a group home operator to locate and renovate a property for use as a group home. The property developer applied to the City of St. Peters for an occupancy permit, which was ultimately denied. The property developer's involvement in the group home was clearly more than that of a landlord, making the facts of the *City of St. Peters* case distinguishable. Further, although the United States alleged that the property developer was damaged when he sold the property at a loss, the consent decree provided that he would receive no payment or monetary relief. In any event, a consent decree represents the agreement of the parties rather than the court's resolution of the claims asserted. *See Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 522 (1986). The Court therefore does not rely on the *St. Peters* consent decree as authority for plaintiffs' associational discrimination argument.

The situation presented in this case was addressed most recently by the court in *CC Recovery, Inc. v. Cecil County, Maryland*, 26 F. Supp. 3d 487 (D. Md. 2014). That court examined the following interpretive guidance from the Attorney General on the applicable regulation, paragraph (g) of 28 C.F.R. § 35.130:

> Paragraph (g), which prohibits discrimination on the basis of an individual's or entity's known relationship or association with an individual with a disability, is based on sections 102(b)(4) and 302(b)(1)(E) of the ADA. This paragraph was not contained in the proposed rule. The individuals covered under this paragraph are any individuals who are discriminated against because of their known association with an individual with a disability. For example, it would be a violation of this paragraph for a local government to refuse to allow a theater company to use a school auditorium on the grounds that the company had recently performed for an audience of individuals with HIV disease.
>
> This protection is not limited to those who have a familial relationship with the individual who has a disability. Congress considered, and rejected, amendments that would have limited the scope of this provision to specific associations and relationships. Therefore, if a public entity refuses admission to a person with cerebral palsy and his or her companions, the companions have an independent right of action under the ADA and this section.
>
> During the legislative process, the term "entity" was added to section 302(b)(1)(E) to clarify that the scope of the provision is intended to encompass not only persons who have a known association with a person with a disability, but also entities that provide services to or are otherwise associated with such individuals. This provision was intended to ensure that entities such as health care providers, employees of social service agencies, and others who provide professional services to persons with disabilities are not subjected to discrimination because of their professional association with persons with disabilities.

28 C.F.R. § Pt. 35, App. B. The *CC Recovery* court found the above guidance suggested that "mere temporal presence on a piece of property" was not sufficient to

establish a relationship or association with an individual with a disability. *CC Recovery*, 26 F. Supp. 3d at 494. This Court agrees that the regulation guidance seems to require some type of interaction with disabled persons in order to come within the scope of having a "known relationship or association with an individual with a disability." Owning the property on which another entity will provide services to disabled persons is not sufficient. *Id.; see also CRC Health Grp., Inc. v. Town of Warren*, No. DBH-11-196, 2013 WL 607912, at *1 (D. Me. Feb. 19, 2013) (landlord did not allege sufficient facts to show relationship or association with any disabled individual); *Calvary Christian Ctr. v. City of Fredricksburg*, 800 F. Supp. 2d 760, 769 (E.D. Va. 2011) (landlord's allegations that it sought to house, rather than operate, school for disabled students was a "level of association [that] does not suffice to create associational standing.").

The interpretive guidance also tends to suggest that the persons seeking damages for discrimination must have experienced or suffered some act at the hands of a public entity in order to have a viable Title II claim. The City of Ocean Springs did not take any direct action against the plaintiffs in this case. Instead, the plaintiffs simply experienced the collateral economic effects of the City's actions against Psycamore. The Court concludes that plaintiffs' complaint cannot support a claim under Title II of the ADA.

B.  Equal Protection and Substantive Due Process

The constitutional rights plaintiffs seek to enforce require application through some legislative act. *See Katzenbach v. Morgan*, 384 U.S. 641, 649 (1966). Although

plaintiffs do not reference it, their constitutional claims are redressable through 42 U.S.C. § 1983. *Thomas v. Shipka*, 818 F.2d 496, 500 (6th Cir. 1987), vacated on other grounds, 488 U.S. 1036 (1989) (Section 1983 provides the exclusive remedy for constitutional claims brought against local units of government). Therefore, the Court construes plaintiffs' equal protection and substantive due process claims as being brought under § 1983. *Azul–Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992); *Henderson v. Corr. Corp. of Am.*, 918 F.Supp. 204, 208 (E.D. Tenn. 1996); *Zentgraf v. Texas A & M Univ.*, 492 F. Supp. 265, 270-71 (S.D. Tex. 1980).

The City argues that plaintiffs do not have standing to bring claims of constitutional violations because Psycamore, not the plaintiffs, were subject to action by the City. The City argues that "plaintiffs have not applied to the City for a permit; have not been denied a permit; have not had their property rezoned or had a rezoning request denied." (Def. Mem. 10, ECF No. 8). In support of its argument, the City points to the Fifth Circuit's statement that "[g]enerally, a person does not have standing to assert the interests of another, 'even when the very same allegedly illegal act . . . affects the litigant [and] a third party.'" *Bonds v. Tandy*, 457 F.3d 409, 416 (5th Cir. 2006) (quoting *United States Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990)).

The plaintiffs agree that they could not have applied for an occupancy permit, but the City's action of denying Psycamore's permit request directly damaged the plaintiffs in a manner distinct from Psycamore's damage. Specifically, plaintiffs

"had an actual lease contract in place which was destroyed by the City's unconstitutional actions." (Pl. Mem. 4, ECF No. 10). Plaintiffs point to an Eleventh Circuit opinion in which the court found that a landlord had standing to bring an equal protection claim, *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027 (11th Cir. 2008). The landlord's allegations were: 1) it suffered financial injury from lost rent and a lost property sale; 2) the injury was caused by the city's actions (enactment and enforcement of an overcrowding ordinance), and 3) the landlord's injury would be remedied by proposed damages and injunctive relief. *Id.* at 1038-39.

"On a motion to dismiss, plaintiffs must allege facts that give rise to a plausible claim of [their] standing." *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009). In the Court's opinion, plaintiffs have alleged sufficient facts to show they have standing to bring equal protection and substantive due process claims. They are seeking recompense for their own damages caused by the City's actions, not asserting the rights of Psycamore. The Supreme Court has stated that

> [t]he fact that the harm to [the plaintiffs] may have resulted indirectly does not in itself preclude standing. When a governmental prohibition or restriction imposed on one party causes specific harm to a third party, harm that a constitutional provision or statute was intended to prevent, the indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights.

*Warth v. Seldin*, 422 U.S. 490, 504-05 (1975). At this stage of the proceedings, and construed as a claim for damages under 42 U.S.C. § 1983, the facts alleged give rise to a plausible Constitutional claims which plaintiffs' have standing to pursue.

Finally, the City argues that in the event plaintiffs attempt to make equal protection and substantive due process claims under Mississippi state law, the claims must be dismissed because plaintiffs did not comply with the notice and limitations requirements of the Mississippi Tort Claims Act. There is no more than a passing reference to state law in plaintiffs' Complaint, and plaintiffs do not address this issue in their response to the City's Motion to Dismiss. The Court therefore concludes that plaintiffs did not bring state law claims against the City.

CONCLUSION

Having reviewed the allegations of plaintiffs' Complaint in the light most favorable to plaintiffs, the Court finds that plaintiffs have adequately stated constitutional claims against the City, but have failed to state a claim against the City pursuant to the Americans With Disabilities Act. Accordingly, the ADA claim will be dismissed.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion to Dismiss [7] filed by the City of Ocean Springs, Mississippi, is **GRANTED** to the extent that plaintiffs' Americans With Disabilities Act claim is dismissed. The Motion is **DENIED** in all other respects.

**SO ORDERED AND ADJUDGED** this the 13th day of April, 2015.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE